## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HEATHER FORD and ROBERT FORD,** ) | |
| **individually and on behalf of other** ) | |
| **similarly situated persons,** )   **Case No. 20-cv-2553** | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | |
| ) | |
| **FIDELITY BANK, N.A.** ) | |
| ) | |
| **Defendant** ) | |

## COMPLAINT

1.      Plaintiffs Heather Ford and Robert Ford ("Plaintiffs" or "the Fords"), individually and on behalf of all others similarly situated, bring this action against Defendant Fidelity Bank, N.A. ("Defendant" or "Fidelity"). On behalf of themselves and the class and subclass they seek to represent, Plaintiffs allege as follows:

## NATURE OF THE ACTION

2.      This is a class action on behalf of individuals and entities seeking redress for Fidelity's fraudulent and deceptive practices involving the manner in which Fidelity purchases and then seeks reimbursement for hazard insurance involving homes and residences that are the subject of foreclosure proceedings, and which are ultimately "redeemed" by the homeowners or their assignees.

3.      Through a deceptive pattern and practice going back years, Fidelity has charged individuals who redeem their homes after foreclosure sales for a full year of hazard insurance, even though just a small fraction of the insurance is typically used, and even though insurance companies will typically reimburse a purchaser for unused insurance. Fidelity is unjustly enriching itself and misleading persons who are at their most financially vulnerable—homeowners who just lost their homes in foreclosure proceedings and are trying to struggle back and recover their homes.

## THE FORECLOSURE REDEMPTION PROCESS AND FIDELITY'S
## FRAUDULENT PRACTICES IN CONNECTION WITH THAT PROCESS

4.      In Kansas (and in a number of other states), homeowners who are foreclosed upon and lose their residences at foreclosure sales have the statutory right (in Kansas under K.S.A. § 60-2414) to "redeem" their properties—in effect buy back the properties from the purchasers (usually the lending banks) within a specified period of time.

5.      Redemptions in Kansas occur within either three months of the foreclosure sale, or 12 months after the sale, depending on the percentage of the original loan balance that remains outstanding.  The redemption period is three months if the borrower has paid less than one-third of the original mortgage balance.  If more than one-third has been paid, the period is 12 months.  *See* K.S.A. § 60-2414(m).

6.      To redeem their property, homeowners must pay a sum equal to the sales price the property brought at the foreclosure sale plus certain costs incurred "[d]uring the period allowed for redemption" by the purchaser, including "taxes on the lands sold, insurance premiums on the improvements thereon, [and] other sums necessary to prevent waste."  K.S.A. § 60-2414(d).

7.      As noted, one such reimbursable expense is hazard insurance. When Fidelity as a foreclosing bank is the successful bidder at a foreclosure sale, it sometimes purchases hazard insurance to protect the property following the sale. Fidelity typically buys coverage for a full year, even though insurance can be purchased for shorter periods of time (such as one month).

8.      Prior to a redemption taking place, outside counsel for Fidelity prepares a redemption payoff statement. In redemptions involving the purchase of hazard insurance by Fidelity, counsel has the opportunity at that point to prorate the insurance amount. However, despite the fact virtually all expenses in typical real estate closings (including redemption closings) are prorated, Fidelity and its counsel willfully and intentionally decide as part of their wrongful scheme to not prorate hazard

insurance. Similarly, Fidelity and its counsel do not affirmatively disclose that the redemption payoff amount reflects the purchase of insurance for a full year.

9.     Therefore, in redemptions in which Fidelity has purchased a full year of insurance, the redeeming homeowner is required to pay that entire cost as part of the redemption.

10.    Following those redemptions, however, the insurance companies most likely reimburse Fidelity for the portion of the insurance that was not used, as is the custom for ordinary home insurance that is purchased but goes unused when the property changes ownership during the insurable period. For redemptions that occur within the three-month period permitted for, approximately 75% (or more) of the purchased insurance is not used. However, Fidelity does not return the reimbursed funds to the redeeming homeowners (or their assignees).  Rather, it keeps the funds as an undeserved windfall even though the proceeds are unearned and rightfully belong to the homeowners.

11.    The amounts at issue are not *de minimis*. While the cost of a full year of hazard insurance varies depending on property value and other factors, amounts can range from just under $1,000 to many thousands of dollars.

12.    Plaintiffs assert putative class action claims on behalf of themselves and all members of the putative classes defined below.  Plaintiffs seek damages, restitution, and injunctive relief.

### PARTIES

13.    Plaintiff Heather Ford is a citizen of Kansas who resides in Clearwater, Kansas, and is over the age of 18.

14.    Plaintiff Robert Ford is a citizen of Kansas who resides in Clearwater, Kansas, and is over the age of 18.

15.   Defendant Fidelity, N.A. is a national banking association, with its principal place of business located in Wichita, Kansas.

## JURISDICTION AND VENUE

16.   This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).   The aggregate claims of all members of the proposed classes exceed $5 million, exclusive of interest and costs, and each have more than 100 putative class members.   Plaintiffs, as well as most members of the proposed Nationwide Class and Kansas Subclass, are citizens of states different than Fidelity.

17.   Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district or, alternatively, under 28 U.S.C. § 1391(b)(3) because Fidelity is subject to the Court's personal jurisdiction with respect to this action.

18.   This Court has personal jurisdiction over Fidelity because it maintains its corporate headquarters in Kansas and because the transactions or occurrences giving rise to this action occurred in Kansas.

## FACTUAL ALLEGATIONS

### A.   The Fords' Foreclosure and Subsequent Redemption of their Property

19.   On September 28, 2016, Fidelity commenced a foreclosure action in the District Court of Sedgwick County, Kansas against Heather and Robert Ford.

20.   Fidelity's outside counsel in the foreclosure action was Millsap & Singer, LLC, a large regional foreclosure law firm based in St. Louis.

21.   Some five years earlier, the Forde's had obtained a loan secured by a mortgage on their residence located at 2959 E. 79th Street S. in Haysville, Kansas.

22.   According to Fidelity's foreclosure petition, the Fords had been delinquent on their loan payments since October 1, 2015.

23.   In its foreclosure petition, Fidelity requested that the court enter judgment against the Fords, the mortgaged property, and further order that the period of redemption be limited to "three (3) months from the date of [the Sheriffs] sale" because "less than one-third of the mortgage indebtedness [had been] paid."

24.   Neither the Fords nor any counsel on their behalf appeared in or otherwise defended the foreclosure action.

25.   On November 7, 2016, the district court entered a judgment of foreclosure against the property and against the Fords individually for $197,663.31, with $195,380.43 attributed to the unpaid principal balance and accrued interest, and the remainder to attorneys' fees and various other expenses.

26.   The district court's order further directed the Sedgwick County Sheriff to sell the property at a public auction if  did not satisfy the judgment balance within 10 days and, pursuant to Fidelity's request, ordered that ' redemption period be set at "three (3) months" following the date of sale.

27.   The Fords did not satisfy the judgment. Accordingly, on December 14, 2016, the sheriff conducted a public sale of the property, at which Fidelity purchased it for $185,367.00.

28.   The sheriff's sale triggered the commencement of the statutory period for which the property was subject to the right of redemption, a right now owned and exercisable by Plaintiffs. Pursuant to the district court's order, Plaintiffs' redemption rights were to expire three months later, on March 14, 2017.

**B.   Fidelity Includes the Cost of Excessive and Unused Insurance as Part of the Fords' Redemption Payoff**

29.   K.S.A. § 60-2414(d) permits a holder of a certificate of purchase to "repayment of all sums" paid for "taxes on the lands sold, insurance premiums on the improvements thereon, other sums necessary to prevent waste" during "the period allowed for redemption" by including such expenses in the redemption amount.  The statute requires all such expenses be "shown by receipts or vouchers filed in the office of the clerk of the district court."

30.   On February 21, 2017, counsel for Fidelity responded to a request from the Fords for a redemption payoff amount.  In its response letter, Fidelity purported to present the "amount needed to the redeem the property":

> This letter is in response to your correspondence in which a redemption quote was requested for the purpose of redeeming the above referenced property.
>
> . . . As of today the amount needed to redeem the property referenced above is as follows:

| | | |
|---|---|---|
| $185,367.00 | - | Purchase Bid |
| $1,752.10 | - | Statutory Interest (% 5.00% good through 2/21/2017 |
| $2,331.08 | - | Lender Place Insurance effective 12/22/2016 |
| $163.84 | | Lender Place Insurance (1/14/17-2/14/17) |
| $45.00 | - | Inspections |
| $189,659.02 | | Total Amount Needed to Redeem the Property as of 2/21/2017 |
| $25.40 | | Per Diem from 2/21/2017 |

> Please be advised that . . . [m]y client has the statutory right to expend money to appraise, inspect, and maintain the property between now and when the Redemption Period expires, and to be reimbursed for those costs if indeed you, or your assigns, redeem the property . . .

31.   As shown above, Fidelity's redemption quote included the bid price paid at the foreclosure sale, various interest charges, an "Inspection" fee, and—most notably—expenses for

"Lender Place [Hazard] Insurance effective 12/22/2016" in the amount of $2,331.08.  Fidelity further emphasized its right, consistent with K.S.A. § 2414(d), "to expend money to appraise, inspect, and maintain the property between now and when the Redemption Period expires, and to be reimbursed for those costs if indeed you . . . redeem the property."

32.   By presenting such insurance charges as reimbursable in the redemption quote, Fidelity represented that such amounts were incurred for maintenance and preservation of the property during the 3-month redemption period, as required by K.S.A. § 2414(d).

33.   But that is false. Contrary to Fidelity's representation, the $2,331.08 in expenses incurred to procure hazard insurance was in fact a premium for at least an entire year of coverage, not the redemption period.

34.   Assuming Fidelity's $2,331.08 figure accurately reflected the cost of insuring the property for one year, Fidelity overstated the costs of insuring the property during the redemption period—*i.e.*, the period running from the date of the foreclosure sale to the date that Plaintiffs redeemed the property—by $1,884.02.

35.   Further, Fidelity—in direct violation of K.S.A. § 60-2414(d)—failed to file "receipts or vouchers" to support its purported insurance expenditure.

36.   Accordingly, and in reliance upon Fidelity's representations the Fords exercised their redemption rights in the foreclosed property on February 22, 2017 by tendering  $189,684.42 to the Clerk of the Sedgwick County District Court.

37.   Fidelity likely cancelled, or certainly could have cancelled, the hazard insurance on or around February 22, 2017, when the Fords exercised their redemption rights and thereby extinguished Fidelity's insurable interest in the property.

38.   Fidelity therefore likely did, or could have, received a refund of approximately $1,884.02 in unearned premium upon termination of the policy, even though the costs of such unused insurance were paid by the Fords.

39.   The Fords first learned that they had been fraudulently overcharged for hazard insurance on or around August 2020.

40.   Whether or not Fidelity received a refund of unearned hazard insurance premium, the Fords have suffered damage by paying excess hazard insurance premium in reliance on Fidelity representations that such costs were incurred in preserving the property during the redemption period when they were not, in fact, attributable to property preservation during the redemption period and thus were not reimbursable under K.S.A. § 60-2414(d).

**C.   A Different Foreclosure Proceeding Suggests that Fidelity Likely Received a Refund of the Unearned Insurance Premium and Illustrates the Proper Procedure for Returning Funds to the Redeeming Party**

41.   In another Kansas foreclosure case in which the foreclosed property ultimately was redeemed, the mortgage lender, Bank of America, returned to the court funds it received for unused insurance. *See Bank of America, N.A. v. Johnson*, Case No. 13-CV1565, Sedgwick County District Court) ("*Johnson*").

42.   Specifically, in a pleading titled "Motion to Deposit Funds in the Court Registry," Bank of America advised the court of the following:

(a) On or about November 17, 2015, Bank of America provided a redemption quote to the redeemer in the amount of $113,572.72.

(b) The redemption amount included an advance for "Hazard Insurance Premiums" in the amount of $2,348.00.

(c) On or about November 20, 2015, the redemption took place when the redeemer deposited redemption funds in the amount of $113,615.68 into the court registry.

(d) Subsequent to the redemption Bank of America terminated the insurance policy and recovered "the *pro rata* portion of the insurance premium in the amount of $1,404.95."

(e) Bank of America "is returning said funds to the Court and requests said funds to be deposited into the Court registry to await further order."

43.    Notably, the redeemer in *Johnson* was a corporate entity that acquired the homeowner's redemption rights and was represented by counsel.

44.    The procedure that Bank of America followed in *Johnson* is an example of what should happen in these types of cases, and it demonstrates that banks do, in fact, receive reimbursements for unused insurance. Unfortunately, *Johnson* is an outlier—and Fidelity does not appear to follow it.

## CLASS ACTION ALLEGATIONS

45.    Description of the Classes: Plaintiffs bring this class action on behalf of themselves and other similarly situated individuals. Pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3) and (c)(4), as applicable, Plaintiffs seek certification of the following classes of individuals:

(a) The Nationwide Class:

All residents of the United States who redeemed a property purchased in foreclosure by Fidelity and, in connection with that redemption, reimbursed Fidelity for property insurance premiums that were not prorated to reflect the period of ownership held by Fidelity.

(a) The Kansas Subclass:

All residents of the United States who redeemed a property situated in Kansas that was purchased in foreclosure by Fidelity and, in connection with that redemption, reimbursed Fidelity for property insurance premiums that were not prorated to reflect the period of ownership held by Fidelity.

Excluded from the classes are Fidelity's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the classes are any judge, justice or judicial officer

presiding over this matter and the members of their immediate families and judicial staff.

46.   <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiffs and members of the classes, and those questions substantially predominate:

(a)  Whether Fidelity was unjustly enriched by the conduct and practices described herein;

(b)  Whether Fidelity fraudulently misrepresented insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(c)  Whether Fidelity negligently misrepresented insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(d)  Whether Fidelity fraudulently failed to disclose facts pertaining to insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(e)  Whether Fidelity's misrepresentations and/or omissions pertaining to insurance expenses purportedly incurred for the maintenance of property during the redemption period were material;

(f)  Whether equity and good conscience requires that Fidelity make restitution to the Plaintiffs and the class members;

(g)  Whether Plaintiffs and the class members are entitled to recover actual damages from Fidelity;

(h)  Whether Plaintiffs and the class members are entitled to injunctive relief; and

(i)  Whether Fidelity acted intentionally, maliciously, and/or recklessly when it undertook the conduct described herein, such that Plaintiffs and the class members are entitled to an award of punitive damages.

47.   Numerosity: The proposed classes are so numerous that individual joinder of all members is impracticable.

48.   All members of the proposed classes are ascertainable by objective criteria. Fidelity and/or its counsel or other agents have litigation and loan servicing records sufficient to identify the members of the classes, and contact information which can be used to provide notice to the class members.

49.   Typicality: Plaintiffs' claims are typical of the claims of the members of the proposed classes. Plaintiffs and all members of the classes have been similarly affected by the actions of Fidelity.

50.   Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of members of the classes. Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiffs and counsel are committed to vigorously prosecuting this action on behalf of class members and have the financial resources to do so.

51.   Superiority of Class Action: Plaintiffs and the members of the classes suffered, and will continue to suffer, harm by Fidelity's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the classes is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Fidelity's common course of conduct. The class action

device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.

52.   By its statements, words, and/or acts, Fidelity suppressed the truth regarding the hazard insurance premiums assessed to, and paid by, Plaintiffs, the Nationwide Class members, and the Kansas Subclass members, including by:

(a) affirmatively misrepresenting to Plaintiffs, the Nationwide Class members, and the Kansas Subclass members that the hazard insurance expenses it incurred were for maintenance and preservation of the redeemed property during their statutory redemption periods, when the charges in fact corresponded to a coverage term exceeding the specific redemption periods;

(b) failing to substantiate such claimed expenses by receipts or vouchers filed with the clerk of the district court, as required by K.S.A. § 2414(d); and/or

(c) affirmatively withholding from Plaintiffs, the Nationwide Class members, and the Kansas Subclass members the fact that Fidelity likely did, or could have, received refunds for hazard insurance that was not used and/or needed following  the redemption of the properties.

53.   Because of Fidelity's misrepresentations, omissions, and general scheme to conceal the truth about the claimed hazard insurance premiums, Plaintiffs, the Nationwide Class members, and the Kansas Subclass members did not become aware, and could not have become aware through the exercise of reasonable diligence, of the facts described herein.

54.   Accordingly, the Court should toll the statutory limitations periods otherwise applicable to the claims of Plaintiffs, the Nationwide Class, and the Kansas Subclass under the doctrines of fraudulent concealment, equitable estoppel, and/or the discovery rule.

**COUNT I**
**Unjust Enrichment**
**(On Behalf of Plaintiffs, the Nationwide Class, and the Kansas Subclass)**

55.   Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

56.   Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class, and the Kansas Subclass.

57.   Plaintiffs conferred a benefit on Fidelity when they tendered a redemption payment comprised in part of a full year's worth of prepaid hazard insurance premium on the redeemed property.

58.   Fidelity cancelled, or should have cancelled, the hazard insurance it procured upon Plaintiffs' exercise of their redemption rights, which extinguished any insurable interest Fidelity had in the property.

59.   Fidelity thus received or was entitled to receive a refund of portion of prepaid hazard premium that remained unearned at the time of the policy's cancellation.

60.    Fidelity nonetheless accepted, appreciated, retained such premium refund, or failed to exercise its rights to such a refund, with knowledge that it belonged to Plaintiffs.

61.   Fidelity's retention of the premium refund by is inequitable under the circumstances because, among other reasons, all costs of procuring such insurance were borne by Plaintiffs, not Fidelity, and because Fidelity's interests in the property or any income or expense reimbursements associated with it terminated when Plaintiffs tendered their redemption funds.

## COUNT II
### Fraudulent Misrepresentation
### (On Behalf of Plaintiffs, the Nationwide Class, and the Kansas Subclass)

62.    Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

63.    Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class, and the Kansas Subclass.

64.    Fidelity made representations to Plaintiffs regarding the amount of hazard insurance procured for maintenance and preservation of the property during the redemption period and regarding the amount Plaintiffs must pay to exercise their statutory redemption rights.

65.    These representations were false—Fidelity overstated the amount Plaintiffs were required to pay in order to exercise their redemption rights by including a hazard insurance premium in Plaintiffs' redemption payoff amount that exceeded the term of the redemption period.

66.    Fidelity intended that Plaintiffs rely on its representations to ascertain the total sum they must pay and expenses they must reimburse Fidelity in order to exercise their redemption rights.

67.    Plaintiffs relied on the truth and accuracy of the information conveyed by Fidelity to ascertain the total sum they must pay and expenses they must reimburse Fidelity in order to exercise their redemption rights.

68.    Plaintiffs sustained damages when they relied on the truth and accuracy of such information conveyed by Fidelity because, among other reasons, they reimbursed the costs of a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

69.    Fidelity acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiffs are entitled to an award of punitive damages sufficient to punish and deter like conduct.

## COUNT III
### Negligent Misrepresentation
### (On Behalf of Plaintiffs, the Nationwide Class, and the Kansas Subclass)

70.   Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

71.   Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class, and the Kansas Subclass.

72.   Fidelity supplied false information to Plaintiffs for their guidance and benefit in ascertaining the amount they must pay to redeem their properties in foreclosure.

73.   Specifically, Fidelity failed to exercise due care in ensuring that the hazard insurance premium included in Plaintiffs' redemption payoff amount accurately corresponded to the duration of the redemption period.

74.   Plaintiffs relied on the truth and accuracy of the information conveyed by Fidelity regarding the nature and extent of reimbursable expenses included in Plaintiffs' redemption payoff amount.

75.   Plaintiffs are within the class of persons whom Fidelity intended to guide when it supplied information regarding the nature and extent of reimbursable expenses included in Plaintiffs' redemption payoff amount or, alternatively, are within the class of persons to whom Fidelity knew such information would be communicated by another.

76.   Plaintiffs sustained damages when they relied on the truth and accuracy of such information conveyed by Fidelity because, among other reasons, they reimbursed the costs of a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

## COUNT IV
### Fraud by Silence
### (On Behalf of Plaintiffs, the Nationwide Class, and the Kansas Subclass)

77.    Plaintiffs incorporate all prior allegations of this Complaint as if set forth fully herein.

78.    Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class, and the Kansas Subclass.

79.    Fidelity had a duty to disclose material facts to Plaintiffs regarding the nature and extent of reimbursable expenses added to Plaintiffs' redemption total, including: that the claimed hazard insurance expenses were annualized and not prorated to the actual duration of the redemption period; and/or that Fidelity and/or its agents received a refund of unearned premium to which Plaintiffs were entitled.

80.    Fidelity's duty to disclose arises arise by law, including without limitation, under K.S.A. § 2414(d) 12 CFR § 1024.37(g), and a litigant's and/or its counsel's duties of candor to the court.

81.    Fidelity's duty to disclose also arises by virtue of its own culpability in creating Plaintiffs' mistaken belief that the claimed hazard insurance were attributable to the redemption period.

82.    Fidelity knew or had reason to know that the undisclosed information about the hazard insurance expenses were material to Plaintiffs' decision to tender a redemption payment inclusive of such expenses.

83.    Fidelity intended that Plaintiffs rely on its silence as grounds to believe that the stated hazard insurance expenses covered only the term of the redemption period and/or that Plaintiffs were not entitled to a refund of unearned premium upon termination of the coverage.

84. Plaintiffs in fact relied on Fidelity's silence as grounds to believe that the stated hazard insurance expenses covered only the term of the redemption period and/or that Plaintiffs were not entitled to a refund of unearned premium upon termination of the coverage.

85. Plaintiffs have sustained damages directly and proximately caused by the foregoing conduct in an amount to be proven at trial, including by paying the costs of a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

86. Fidelity acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiffs are entitled to an award of punitive damages sufficient to punish and deter like conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed classes, respectfully request that this Court:

(a) Certify the Nationwide Class and the Kansas Subclass pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4);

(b) Appoint Plaintiffs as Class Representatives for the Nationwide Class and the Kansas Subclass and appoint their counsel as Class Counsel for the Nationwide Class and Kansas Subclass pursuant to Federal Rule of Civil Procedure 23(g);

(c) Find Fidelity's conduct was unlawful as alleged herein;

(d) Enjoin Fidelity from engaging in further unlawful conduct as alleged herein;

(e) Award Plaintiffs and the class members nominal, actual, compensatory, consequential, and punitive damages;

(f) Award Plaintiffs and class members pre-judgment and post-judgment interest;

(g) Award Plaintiffs and the class members reasonable attorneys' fees, costs, and expenses; and

(h) Grant such other relief as the Court deems just and proper.

\*        \*        \*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable and designate Kansas City, Kansas, as the place of trial.


Dated:  November 6, 2020.                          Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ Bradley T. Wilders
Bradley T. Wilders  KS #78301
Michael R. Owens  KS #26747
460 Nichols Road, Ste. 200
Kansas City, Missouri 64112
Tel: 816-714-7100
wilders@stuevesiegel.com
owens@stuevesiegel.com

**SNYDER LAW FIRM LLC**

Paul D. Snyder   KS #14537
Karen E. Snyder KS #15424
Snyder Law Firm, LLC
10995 Lowell Ave, Ste 710
Overland Park, KS 66210
Tel: 913-685-3900
psnyder@snyderlawfirmllc.com
ksnyder@snyderlawfirmllc.com

*Attorneys for Plaintiffs and*
*the Proposed Classes*